WALTER J. KINSEY, SR., and DELLA E. KINSEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kinsey v. Commissioner
Docket No. 1382-72.
United States Tax Court
T.C. Memo 1974-27; 1974 Tax Ct. Memo LEXIS 294; 33 T.C.M. (CCH) 126; T.C.M. (RIA) 74027; January 30, 1974, Filed. *294 Traveling expenses, including meals and lodging, incurred by petitioner, held not deductible under sec. 162(a) (2) since not incurred "while away from home," petitioner's "tax home" being Detroit, Mich., his place of employment, not Sturgis, Mich., his place of family residence. Walter J. Kinsey, Sr., pro se. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION
IRWIN, Judge: Respondent determined the following *295 deficiencies in income taxes of petitioners: Taxable Years
Deficiency 1968
$ 888.00
1969
1,083.88
1970
457.68 2 The sole issue for our determination is whether peti 2 The sole issue for our determination is whether petitioner Walter J. Kinsey, Sr., was "away from home" during the taxable years 1968, 1969 and 1970, while employed by the K. G. Marks Construction Company in Detroit, Mich., so that his travel expenses, including meals and lodging, are deductible under section 162(a) (2). [1] Petitioners have not contested respondent's adjustment of their income tax for 1968 whereby their medical deduction was decreased by $174 and their sales and gasoline tax deductions were increased by $134.
FINDINGS OF FACT
Some of the facts have been stipulated and are found accordingly.
Petitioners, Walter J. Kinsey, Sr., and Della E. Kinsey, husband and wife, resided in Sturgis, Mich., at the time of the filing of their petition with this Court. For the taxable years 1968, 1969 and 1970, petitioners timely filed joint tax returns with the Internal *296 Revenue Service Center, Covington, Ky.
Walter J. Kinsey, Sr. (hereinafter referred to as petitioner) is a construction worker, having been engaged in bridge construction since 1948. From 1948 through 1963 petitioner worked on a variety of highway bridge construction projects. These projects were scattered throughout the 3 states of Indiana and Michigan, and as a result, petitioner and his family moved frequently during this period. During 1961 petitioner began working on a construction project in Lima, Ind., and at that time petitioner and his wife decided to make their permanent residence in Sturgis, Mich., a town eight miles from the Lima, Ind., project. In determining where to reside, petitioner and his wife were concerned about the education of their children and chose the Sturgis area because of its reputation for good public education.
In 1965 the K. G. Marks Construction Company (hereinafter referred to as Marks Company) hired petitioner as one of its superintendents of bridge construction, a position petitioner held until leaving Marks Company in 1970.As a superintendent of bridge construction petitioner was a salaried employee of Marks Company.
In December 1966 *297 Marks Company informed petitioner that he was to work on the Fisher Freeway project in Detroit, Mich. Since Detroit is approximately 150 miles from Sturgis, petitioner was reluctant to work on the project but found he had no choice if he wished to continue his employment with Marks Company. The Fisher project started in January 1967 with a completion date set for August 1969. Marks Company's part of the project was actually completed in December 1968.
During this period Marks Company also succeeded in contracting for the Jeffries-Grand River Freeway project, also 4 in Detroit, and the company commenced work on that project in September 1968. This project was not completed until December 1972. Marks Company directed petitioner to supervise the bridge construction on this project also and petitioner continued as a superintendent on this project until he was laid off in September 1970. During the overlap of the two projects petitioner acted as a superintendent at both sites.
While working on the two projects petitioner lived in Detroit with his family remaining in Sturgis. When possible petitioner would drive down to Sturgis to visit his family. During the three years in *298 issue petitioner had no employment or income-related activities in Sturgis although his wife supplemented their income by obtaining employment there in 1969 and 1970.
On their joint income tax returns for 1968, 1969 and 1970, petitioner deducted the following amounts as traveling expenses incurred "while away from home in the pursuit of a trade or business": 1968
1969
1970 Auto Expense
$2,580
$ 750
$ 666
Lodging
752
1,246
787
Meals
1,560
1,250
860
Telephone, Telegraph, and Postage
26
62
Laundry, Cleaning
178
Total
$5,096
$3,308
$2,313
In the 1968 tax return respondent disallowed all but 5 $750 of the claimed $5,5096 deduction. In the 1969 and 1970 returns respondent disallowed the full amounts claimed as travel expense deductions.
By stipulation the parties have agreed that petitioner spent $752 ($750 was allowed in the notice of deficiency) for lodging at the Y.M.C.A. in Detroit for the year 1968. With respect to the claimed automobile expenses in issue petitioner kept a diary as to the automobile mileage but it apparently was lost when petitioner's car was stolen in 1969. The 1970 automobile expense was based on estimated *299 mileage. The mileage determined for the years in issue was based on petitioner's driving between Sturgis and Detroit on weekends and on any trips made for Marks Company for which there was no reimbursement. However, no evidence was presented indicating that petitioner had in fact made any trips for Marks Company during the years in issue.
Petitioner also did not present any evidence to substantiate the claimed lodging (except for the stipulated $725), laundry, cleaning and telephone, telegraph or postage expenses. With respect to food, petitioner deducted five dollars per day for each day in Detroit but no evidence was presented to substantiate this.
ULTIMATE FINDINGS OF FACT
Petitioner's employment with Marks Company at the project sites in Detroit from January 1967 to September 1970 was of 6 an indefinite nature rather than temporary, and petitioner's decision to retain his residence in Sturgis was for personal, not business reasons.
OPINION
Section 162(a) (2) provides as follows:
SEC. 162. TRADE OR BUSINESS EXPENSES.
(a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on *300 any trade or business, including - * * * * * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *
For a taxpayer to be entitled to a deduction for traveling expenses under such provision it is incumbent upon such taxpayer to demonstrate that the expenses were (1) reasonable and necessary traveling expenses, (2) incurred "while away from home" and (3) incurred in the pursuit of business. .
Respondent's primary contention is that petitioner was not away from "home" during the years in issue as that term is used in the statute.
This Court has consistently held that a taxpayer's "home" within the meaning of section 162(a) (2) is his principal place of employment and not where his personal residence is located, if such residence is located in a different place 7 from his principal place of employment. . See also (C.A. 6, 1968), certiorari *301 denied . But see (C.A. 6, 1961); cf. (C.A. 2, 1971). It is also well established that a married couple may have more than one "tax home" if they are employed in separate locations. , affd. (C.A. 3, 1962). However, there is an exception to this rule where a taxpayer's employment at his principal place of duty is "temporary" as distinguished from "indefinite" or "indeterminate." In such a situation a taxpayer may deduct living expenses incurred at his temporary post of duty. .
At issue here is whether petitioner's employment in Detroit was of a temporary nature so that petitioner's "home" for the purpose of section 162(a) (2) was Sturgis and not Detroit. Petitioner, in this instance, was employed by Marks Company at the two freeway projects in Detroit for a period beginning in January 1967 and extending until September 1970 when petitioner was laid off. The second project was not in fact completed until December 1972. When *302 petitioner was initially directed to supervise the first project, its completion date was set for August 1969, a period of 8 approximately 20 months. While petitioner did not initially know that he would also be working on the second project, there was no indication as to when petitioner would return to his home area. Employment that lacks permanence is "indefinite" rather than "temporary" unless it is the sort of employment in which termination within a short period could be foreseen. ; . See also , affd. per curiam (C.A. 6, 1971).
Having carefully reviewed petitioner's situation, we are of the opinion that petitioner's employment in Detroit was of an indefinite nature rather than temporary. Therefore, petitioner's "home" for the purpose of section 162(a) (2) was Detroit, not Sturgis, and petitioner's claimed traveling expenses are not deductible as expenses incurred "while away from home." [2]
*303 Finally, we note that even if the expenditures were determined to be within the purview of section 162(a) (2), petitioner still could not prevail since he has failed to meet the substantiation requirements of section 274(d). See also Rule 142(a), Rules of Practice and Procedure, United States Tax Court.
Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. As previously noted, respondent allowed petitioner $750 for 1968. No explanation was given as to the reason for this allowance.↩